IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

JAMMIE CASTILLO,

        Plaintiff,

-vs-

RICHARD BOBBITT and CITY OF
BRENHAM, TEXAS,
        Defendants.

CAUSE NO.:
AU-17-CA-00917-SS

## ORDER

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically, Defendant Richard Bobbitt's Motion to Dismiss [#11], Plaintiff Jammie Castillo's Response [#16] in opposition, and Bobbitt's Reply [#18] in support as well as Defendant City of Brenham (the City)'s Motion to Dismiss [#14] and Castillo's Response [#17] in opposition. Having reviewed the documents, the relevant law, and the case file as a whole, the Court now enters the following opinion and orders.

### Background

This is an excessive force case brought under 42 U.S.C. § 1983 against Defendants Richard Bobbitt and the City of Brenham, Texas. On July 14, 2017, Castillo was visiting her former place of employment, a Hampton Inn, with a new friend. Second Am. Compl. [#10] at 2. After arriving at the Hampton Inn and receiving permission for her friend to swim in the hotel swimming pool, Castillo drove off in her friend's car, a rented Kia Soul. *Id.* When hotel management informed Castillo's friend that Castillo had driven off in the vehicle, the friend called the Brenham Police Department and reported Castillo had stolen the vehicle. *Id.*

1

Sometime thereafter, Bobbitt received a report of the stolen vehicle and spotted Castillo driving it down West Main Street in Brenham. When Bobbitt pulled the vehicle over, Castillo informed Bobbitt she was feared for her safety and wished to relocate to "K-Bob's," a restaurant located off U.S. Highway 290 West. *Id.* Castillo alleges she harbored a longstanding fear of the Brenham Police Department due to "excessive force accusations." *Id.* Bobbitt refused Castillo's request to relocate to a more public place. *Id.*

After Bobbitt denied Castillo's request to relocate to a more public venue, Castillo drove away. *Id.* 2–3. Castillo did not make it to "K-Bob's," instead leading Bobbitt, the Harris County Sherriff's Office, the Washington County Sherriff's Office, and the Texas Department of Public Safety on a chase that concluded when law enforcement eventually deployed tire spikes to halt Castillo's vehicle. *Id.* at 3.

After Castillo's car came to a stop, she was physically unable to exit the vehicle because the driver's side door of the Kia Soul would not open. *Id.* When Castillo did not exit the vehicle, Bobbitt opened the passenger door and pulled her out of the vehicle. *Id.* Castillo then "laid still on the ground." *Id.* She took no aggressive action, nor did she attempt to avoid arrest in any way. *Id.* Bobbitt then repeatedly struck Castillo in the face and head with a closed fist. *Id.* As a result of this use of force, Castillo suffered contusions around her right eye and a large hemotoma on her forehead. *Id.*

The Brenham Police Department commenced an internal affairs investigation into Castillo's arrest, which concluded Bobbitt used excessive force in the detention and arrest of Castillo. *Id.* at 3–4. The Brenham Police Department then terminated Bobbitt. *Id.* However, when Bobbitt appealed his termination, the Brenham Police Department withdrew the termination and instead allowed Bobbitt to resign. *Id.*

According to Castillo, the Brenham Police Department records are "probably erased of any findings of use of excessive force." *Id.* However, Castillo alleges the Brenham Police Department's publically available records for 2010–2013 demonstrate Bobbitt tallied more "uses of force" than any other Brenham police officer over that time span. *Id.* On the basis of these records and her encounter with Bobbitt, Castillo alleges the Brenham Police Department failed or refused to train Bobbitt. *Id.* at 4–5.

On December 19, 2017, Castillo filed suit against Bobbitt and the City under 42 U.S.C. § 1983, alleging Bobbitt and the City had violated her Fourth Amendment right to be free from excessive force. Both Bobbitt and the City move to dismiss Castillo's complaint for failure to state a claim on which relief can be granted. These pending motions are now ripe for review.

## Analysis

### I. Legal Standard

The Federal Rules of Civil Procedure require each claim in a complaint include "a short and plain statement . . . showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The claims must include sufficient factual allegations, accepted as true, to state a claim for relief that is facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads sufficient factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 566 U.S. at 678. Although a plaintiff's factual allegations need not establish the defendant is probably liable, they must establish more than a "sheer possibility" a defendant has acted unlawfully. *Id.* Determining plausibility is a "context-specific task," and must be performed in light of a court's "judicial experience and common sense." *Id.* at 679.

3

Motions to dismiss for failure to state a claim are appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim. FED. R. CIV. P. 12(b)(6). When a district court reviews a motion to dismiss pursuant to Rule 12(b)(6), it must construe the complaint in favor of the plaintiff and take all well-pleaded facts as true. *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009). However, a court is not bound to accept legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Although all reasonable inferences will be resolved in favor of the plaintiff, the plaintiff must plead "specific facts, not mere conclusory allegations." *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994). In deciding a motion to dismiss, courts may consider the complaint, as well as other sources such as documents incorporated into the complaint by reference and matters of which a court may take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

## II. Application

### A. Excessive Force Claim

The Fourth Amendment confers a right to be free from excessive force during an arrest. *Deville v. Marcantel*, 567 F.3d 156, 169 (5th Cir. 2009) (per curiam). To establish a claim of excessive force under the Fourth Amendment, a plaintiff must show "(1) an injury (2) which resulted directly and only from the use of force that was clearly excessive to the need and (3) the force used was objectively unreasonable." *Cass v. City of Abilene*, 814 F.3d 721, 731 (5th Cir. 2016) (citation and internal quotation marks omitted).

"Excessive force claims are necessarily fact-intensive; whether the force used is 'excessive' or 'unreasonable' depends on 'the facts and circumstances of each particular case.'" *Deville*, 567 F.3d at 167 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). Guiding this

4

inquiry, the Supreme Court has identified three sets of facts which deserve careful consideration in determining whether the force used is "excessive" or "unreasonable": (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight. *Graham*, 490 U.S. at 396; *see also Griggs v. Brewer*, 841 F.3d 308, 313–14 (5th Cir. 2016) ("A court must measure the force used under the facts as a reasonable person would perceive them, not necessarily against the historical facts.").

Castillo has pled sufficient facts to state a claim for relief against Bobbitt for use of excessive force in violation of the Fourth Amendment. First, Castillo claims she suffered an injury as a result of the force used by Bobbitt. *Cass*, 814 F.3d at 731. Castillo alleges Bobbitt's use of force caused "contusions around the right eye with immediate purple and red discoloration and a large hematoma to the top portion of her head." Second Am. Compl. [#10] at 3. Second, Castillo claims these injuries resulted directly and only from a use of force that was clearly excessive to the need. *Cass*, 814 F.3d at 731. Castillo alleges her injuries resulted when Bobbitt punched Castillo in the face and struck her head with his closed fist. Second Am. Compl. [#10] at 3. Third, Castillo has pled facts supporting the conclusion the force used was clearly excessive and objectively unreasonable. *Cass*, 814 F.3d at 731.[1] Castillo alleges that, after she was pulled out of her car by Bobbitt, she laid motionless on the ground and "took no aggressive actions and did not avoid arrest." Second Am. Compl. [#10] at 3. Castillo alleges Bobbitt punched her in the face and struck her head with his closed fist while Castillo was lying motionless on the ground. *Id.* In the Fifth Circuit, these allegations are sufficient to establish a claim for excessive force. *See Trammel v. Fruge*, 868 F.3d 332, 339–43 (5th Cir. 2017) (concluding jury could determine

---

[1] *See Poole v. City of Shreveport*, 691 F.3d 624, 628 (5th Cir. 2012) (noting inquiries into whether force is clearly excessive and whether force is objectively unreasonable are "often intertwined").

officers' use of force was clearly excessive where officers tackled individual "who was not fleeing, not violent, [and] not aggressive").

Though the facts alleged by Castillo are clearly sufficient to support the conclusion the use of force was clearly excessive and objectively unreasonable, the Court proceeds to analyze the factors identified in *Graham*. First, the Court looks to the severity of the crime at issue. *Graham*, 490 U.S. at 396. Castillo was accused of stealing a rental car and then leading the police on a car chase. Second Am. Compl. [#10] at 3. Law enforcement was eventually forced to deploy tire spikes in order to halt Castillo's flight. *Id*. While these felonies are serious crimes, there was no indication Castillo was armed or used force to allegedly steal the rental car. *Id*. The Court finds, at best, the first *Graham* factor weighed negligibly in favor of the use of force. In contrast, the Court finds the second and third *Graham* factors weigh decisively against the use of force. *Graham*, 490 U.S. at 396. Castillo alleges that Bobbitt's use of force came as she laid supine on the ground and that she was not actively resisting or attempting to evade arrest when Bobbitt began to hit her. Second Am. Compl. [#10] at 3. Based on the facts alleged by Castillo and consideration of the *Graham* factors, the Court finds Castillo has pled sufficient facts to support a claim for relief against Bobbitt for use of excessive force.

### B. Fourteenth Amendment Claims

Castillo's complaint repeatedly invokes the Fourteenth Amendment. Second Am. Compl. [#10] at 2, 5, 6. However, Castillo does not explain how she has stated a claim for relief under the Fourteenth Amendment, other than to assert Bobbitt's actions "were done consciously and for the sole purpose of causing serious bodily injuries and depriving Plaintiff of rights assured by the Fourth and Fourteenth Amendments . . . ." *Id*. at 5. Because Castillo's complaint fails to explain in any way how Bobbitt violated the Fourteenth Amendment, the Court finds Castillo has

not stated a plausible claim for relief with respect to her Fourteenth Amendment claim.[2] Accordingly, the Court GRANTS Bobbitt's motion to dismiss with respect to Castillo's Fourteenth Amendment claims.

C. **Qualified Immunity**

Qualified immunity is a threshold question which courts should resolve before permitting discovery. *See Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) ("[T]he court must determine whether, assuming the truth of the plaintiff's allegations, [the official is entitled to qualified immunity]."). Qualified immunity protects public officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The qualified immunity analysis involves two considerations: "(1) whether facts alleged or shown by plaintiff make out the violation of a constitutional right, and (2) if so, whether that right was clearly established at the time of the defendant's alleged misconduct." *Pasco v. Knoblauch*, 566 F.3d 572, 579 (5th Cir. 2009). As applied in Fourth Amendment excessive force cases, "the second prong of the analysis is better understood as two separate inquiries: whether the allegedly violated constitutional rights were clearly established at the time of the incident; and if so, whether the conduct of the defendants was objectively unreasonable in light of that then clearly established law." *Griggs*, 841 F.3d at 313 (citation and quotation marks omitted); *see also Saucier v. Katz*, 533 U.S. 194, 205 (2001) ("If the officer's mistake as to what the law requires is reasonable . . . the officer is entitled to the immunity defense."). For purposes of determining whether a right is clearly established, courts should "not require a case directly on point," so long as existing precedent "place[s] the statutory or constitutional question beyond

---

[2] It is unlikely an amendment to Castillo's complaint could remedy this deficiency. *See Graham*, 490 U.S. at 395 (explaining claims of excessive force brought against law enforcement officers should be analyzed under the Fourth Amendment rather than under the Fourteenth Amendment's substantive due process standard).

7

debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011); *see also Hope v. Pelzer*, 536 U.S. 730, 739 (2002).

As to the first step of the qualified immunity analysis, the Court has already determined Castillo has pled sufficient facts to state a claim against Bobbitt for use of excessive force in contravention of the Fourth Amendment. *See* Section II.A. The only remaining question is whether Castillo has pled sufficient facts to support the conclusion Bobbitt's conduct was objectively unreasonable in light of clearly established law. *See Griggs*, 841 F.3d at 313.

The Court concludes Castillo has pled sufficient facts to support finding Bobbitt's conduct was objectively unreasonable in light of clearly established law. Castillo alleges Bobbitt struck her repeatedly in the face and head with a closed fist while she lay motionless on the ground. Second Am. Compl. [#10] at 3. Castillo further alleges she was neither evading nor resisting arrest when Bobbitt began to hit her. *Id.*

At the time of Castillo's arrest, the law clearly established it was objectively unreasonable to begin punching an individual who is not violent, fleeing, or resisting arrest. *Trammel*, 868 F.3d at 342–43. Therefore, the Court finds Castillo has pled sufficient facts to overcome Bobbitt's claim of qualified immunity.

### D.     Claims Against the City

In *Monell v. Department of Social Services*, the Supreme Court held that a municipality cannot be held liable under § 1983 on a theory of respondeat superior. 436 U.S. 658, 691 (1978). Municipalities and other local governments may incur § 1983 liability, however, where official policy or custom causes a constitutional violation. *Bennet v. City of Slidell*, 728 F.2d 762, 766 (5th Cir. 1984). For municipal liability to attach, the plaintiff must prove three elements: (1) a policymaker; (2) an official policy; and (3) a "violation of constitutional rights whose 'moving

force' is the policy or custom." *Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001) (quoting *Monell*, 436 U.S. at 694). Official policy may be found in "written policy statements, ordinances, or regulations, but it may also arise in the form of a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 847 (5th Cir. 2009); *see also Piotrowski*, 237 F.3d at 581–82 (emphasizing City must be demonstrate "deliberate indifference" to the constitutional rights of citizens in facilitating the custom).

The Court first addresses Castillo's contention the City should be held liable for infirmities in its policies and practices regarding use of force. The Court then turns to Castillo's allegation the City deliberately adopted inadequate training procedures and failed to appropriately train Bobbitt.

### 1. Unconstitutional Policy or Practice

Castillo alleges the City both (1) lacked reasonable policies against the use of excessive force; (2) failed to compel compliance with the (allegedly unreasonable) written policies which do exist; and (3) maintained an unwritten policy of deliberately protecting and failing to discipline officers for use of excessive force. *See* Second Am. Compl. [#10] at 6–7 (citing failure of City to "discipline, retrain[,] and terminate" officers who violate constitutional rights).

As to Castillo's first two allegations, Castillo does not explain how the City "lacked reasonable policies against the use of excessive force," nor has Castillo explained the shortcomings she perceives in the City's existing policies. *See id.* Castillo also fails to explain how the City has failed to compel compliance with its existing written policies. *Id.* In fact, Castillo has not directly referenced a single written policy, ordinance, or regulation in support of her *Monell* claim. Accordingly, Castillo has failed to plead sufficient facts to support her claim

9

the City is liable under *Monell* for lacking or failing to enforce reasonable policies against the use of excessive force. *See id.*

Castillo also alleges the City has propagated an "unwritten practice and policy" of failing and refusing to discipline officers for uses of excessive force. *Id.*; *see also Piotrowski*, 237 F.3d at 581–82 ("Self-evidently, a City policy of inadequate officer discipline could be unconstitutional if it was pursued with deliberate indifference toward the constitutional rights of citizens."). Specifically, Castillo claims the City has "established a policy, practice and procedure of protecting its officers" who "continuously use" excessive force. Second Am. Compl. [#10] at 7.

In support of her claim the City maintained a widespread practice of failing to discipline police officers for uses of excessive force, Castillo points only to the City's failure to discipline Bobbitt. *Id.* Specifically, Castillo alleges Bobbitt has recorded the most "uses of force" of any Brenham police officer between 2010 and 2013, and that "there is [sic] not indications of retraining or punishments being assessed against him." *Id.* at 4. Castillo does not explain why Bobbitt should be retrained or disciplined for using force in performance of his duties as a police officer—indeed, it is unclear why Bobbitt would be disciplined at all, since Castillo has not alleged the uses of force were excessive or otherwise unconstitutional.[3] *Id.*; *cf. Piotrowski*, 237 F.3d at 582 (denying plaintiff's claim against city where plaintiff failed to present evidence other citizens had complained of officer's conduct in the past). Though Castillo also alleges the City's alleged failure to discipline or reprimand Bobbitt constituted a "continu[ation]" of the City's unwritten practice of protecting its officers, Castillo does not point to any instance in which the

---

[3] Castillo states she "believes many of the reported uses of force were reported as excessive uses of force and involved strikes to the persons being arrested." However, this belief, without more, cannot sustain Castillo's contention the City had a policy of failing to discipline Bobbitt. See *Tuchman*, 14 F.3d at 1067 (requiring plaintiffs to plead specific facts in support of their claims).

10

City has allegedly failed to discipline other officers. *Id.* at 7; *cf. Piotrowski*, 237 F.3d 582 (noting "it is nearly impossible to impute lax disciplinary policy to the City without showing a pattern of abuses that transcends the error made in a single case").

In light of the conclusory nature of Castillo's allegations and her failure to plead specific facts in support of her claims, the Court GRANTS the City's motion to dismiss Castillo's claims against the City for its alleged failure to enforce reasonable written policies or discipline its police officers.

### 2. Failure to Train or Supervise

Castillo arguably attempts to bring an overlapping claim against the City for failure to train or supervise Bobbit. *See* Second Am. Compl. [#10] at 5–6 (alleging City engaged in "negligent training" and "failed and refused to discipline and retrain Bobbitt"). To establish a § 1983 claim for failure to train, a plaintiff must show: "(1) the supervisor either failed to supervise or train a subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Estate of Davis v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005).

Castillo has failed to plead sufficient facts to state a claim against the City for its alleged failure to train or supervise Bobbitt. Specifically, Castillo has failed to allege with any specificity *how* the City's training program and polices were inadequate. Castillo has not alleged the City's training program was noncompliant with state law, nor has Castillo explained how state-mandated training might be inadequate. *See Sanders–Burns v. City of Plano*, 594 F.3d 366, 382 (5th Cir. 2010) (affirming grant of summary judgment where the officers completed state-mandated training program and the plaintiff did not allege the state requirements were

inadequate). Moreover, Castillo has not alleged the City failed to require Bobbitt to undergo its normal training procedures, nor has she alleged the City diverged from its normal discipline procedures in addressing Bobbitt's conduct. In light of the paucity of facts pled by Castillo, the Court GRANTS the City's motion to dismiss as to Castillo's failure to train or supervise claim.[4]

## Conclusion

The Court finds Castillo has pled sufficient facts to state a claim for relief against Bobbitt for excessive use of force in contravention of the Fourth Amendment. The Court further concludes Bobbitt is not entitled to qualified immunity at this time given Castillo's factual allegations. Finally, the Court determines Castillo has failed to state a claim for relief with respect to her Fourteenth Amendment claims as well as her *Monell* claims.

Accordingly,

IT IS ORDERED that Bobbitt's Motion to Dismiss [#11] is GRANTED IN PART and DENIED IN PART as described in this opinion; and

IT IS FURTHER ORDERED that the City's Motion to Dismiss [#14] is GRANTED as described in this opinion and that Castillo's claims against the City are thereby DISMISSED WITHOUT PREJUDICE.

SIGNED this the 16th day of February 2018.

                                               _____
                                               SAM SPARKS
                                               SENIOR UNITED STATES DISTRICT JUDGE

---

[4] Castillo's failure to train claim also fails for the independent reason that she has inexplicably brought the claim under the Fourteenth Amendment. *See* Second Am. Compl. [#10] at 6 (asserting City's alleged failure to retrain or discipline Bobbitt was "in violation of Plaintiff's Fourteenth Amendment rights.").